[Sac. No. 15.  In Bank.—December 17, 1896.]

R. A. SHADE, Respondent, *v.* THE SISSON MILL AND LUMBER CO., Appellant.

115  357
122  604
123  190
115  357
137  674

Instructions — Appeal— Argument —Waiver of Exceptions.—Where the rulings of the trial court, in giving certain instructions asked for by the plaintiff, and refusing other instructions upon the same subject matter asked for by the defendant, are duly excepted to by the defendant, and specified as errors of law in the statement on motion for a new trial, the discussion by the defendant, in his brief upon appeal, of only the ruling refusing the instructions asked for by him, is not a waiver or abandonment of his exceptions to the giving of the plaintiff's instructions, where it appears that the argument made in the brief necessarily involves a similar argument upon the instructions given.

EMPLOYER AND EMPLOYEE—MONTHLY STATEMENTS OF ACCOUNT—RATE OF
COMPENSATION—ACQUIESCENCE—CONCLUSIVENESS OF EVIDENCE—GEN-
ERAL RULE INAPPLICABLE — QUESTION OF ESTOPPEL. — The general
rule that where a statement of account of past transactions is delivered
to a debtor or creditor, his retaining it without objection is, as to such
past transaction, merely an item of evidence, more or less conclusive,
according to circumstances, does not control where the statement of
account is rendered monthly by an employer to his employee, and
shows the rate of compensation per month allowed to such employee;
but the question in such case is one of estoppel, based upon the silence
of the employee when he ought to have spoken, leading the employer
to believe that the rate of compensation stated in the account was
agreed to, and to act upon such belief.

ID. — ADMISSION — AGREEMENT FOR MONTHLY RATE — ACTION BY EM-
PLOYER UPON ADMISSION—ESTOPPEL OF EMPLOYEE.—Where a person
is employed by the month under an express contract for a fixed salary
or wage, or under an implied contract for the reasonable value of his
services, and the employer delivers to the employee, at the end of each
successive month, a statement of his account, showing the time em-
ployed, and the rate of wages, or salary, allowed, and especially where,
upon the face of the account, is indorsed an express request that the
employee will examine it and give immediate notice of any error, the
failure to object to the account within a reasonable time is a deliberate
admission that the rate of compensation stated in the account is agreed
upon, and that the employment is to be continued upon the same terms
until there is a new agreement; and the employer must be deemed to
have acted upon such admission, as otherwise he would be deprived of
his option to terminate the employment upon notice that more is ex-
pected than he has offered to pay, and the employee is estopped to
claim a higher rate than that so agreed upon.

ID. —ACTION FOR SERVICES—CONFLICTING EVIDENCE — OBJECTION TO AC-
COUNTS—BINDING EFFECT OF FAILURE—ERRONEOUS INSTRUCTIONS.—
In an action by an employee against his employer to recover for services
rendered, where the evidence shows that monthly statements of account
were rendered the employee, but the evidence is conflicting as to whether
the employee objected to the rate of compensation therein stated, as
not being in accordance with the contract of employment, instructions
to the jury based upon the assumption that no objection was made, and
stating, in effect, that the plaintiff was not bound by the statements of
account, even if he never made any objection, are erroneous.

ID.—PLEADING—NATURE OF CONTRACT FOR SERVICES—SPECIAL DEMURRER
TO COMPLAINT—UNCERTAINTY—AMBIGUITY.—Where a complaint, in
in an action to recover for personal services rendered, does not show
whether the plaintiff relies upon a specific contract for a stipulated com-
pensation, or an implied contract for the reasonable value of the services
alleged, a special demurrer thereto for uncertainty and ambiguity
should be sustained.

ID.—TRIAL UPON AMBIGUOUS COMPLAINT—EVIDENCE—EXPRESS CONTRACT
—REASONABLE VALUE OF SERVICES.—Where the trial is had upon an
ambiguous complaint not showing whether the contract for services
declared upon was express or implied, and the plaintiff relies, in evi-

dence, principally upon an express agreement to which he has testified, the defendant may cross-examine the plaintiff's witnesses, and may also offer direct evidence, with a view to showing the reasonable value of the services of plaintiff, as being proper matter in issue under the pleadings.

Id.—Wages Paid to Other Employees.—In such cases, it is error to exclude direct evidence for the defendant as to the wages paid to other men in the same and similar positions in defendant's mill, when the mill was idle and when it was running.

Appeal from an order of the Superior Court of Siskiyou County denying a new trial. Edward Sweeny, Judge.

The facts are stated in the opinion of the court.

*Gillis & Tapscott,* for Appellant.

The court erred in overruling defendant's special demurrer to the complaint, because it could not be told from the complaint whether plaintiff relied upon a specific contract, or upon an implied contract for the reasonable value of the services. (*Tessier* v. *Reed,* 17 Neb. 105; *Small* v. *Poffenbarger,* 32 Neb. 234; Code Civ. Proc., sec. 430, subd. 7.) As plaintiff did not fully perform the contract claimed by him to exist for higher wages, but claims an excuse for nonperformance, he is confined to a *quantum meruit* for his recovery. (*Whitton* v. *Sullivan,* 96 Cal. 480; *Ellis* v. *Woodburn,* 89 Cal. 132; *Swain* v. *Cheney,* 41 N. H. 234.) Where the contract fixes the price to be paid for services, *assumpsit* will not lie, or *quantum meruit,* as for work and labor done. (*Maynard* v. *Tidball,* 2 Wis. 25; *Hubbard* v. *New York etc. Co.,* 119 U. S. 696; 7 Lawson's Rights, Remedies, and Practice, 5746; *Ladue* v. *Seymour,* 24 Wend. 60; *Scott* v. *Congdon,* 106 Ind. 268; *Kirk* v. *Wolf Mfg. Co.,* 118 Ill. 567; *Alderton* v. *Wright,* 81 Mich. 294.) If plaintiff could rely on *quantum meruit,* it was proper to cross-examine him as to what his duties were as foreman of the mill. (*Schluter* v. *Boomgarden,* 91 Iowa, 708.) Plaintiff was clearly bound by the monthly statements which he received and retained from one month to two years or

thereabouts, without objection, and defendant is entitled to a reversal on this point alone. (*Coffee* v. *Williams,* 103 Cal. 550; 1 Am. & Eng. Ency. of Law, 115; *Terry* v. *Sickles,* 13 Cal. 427; *Volkening* v. *De Graaf,* 81 N. Y. 268;. *Guernsey* v. *Rexford,* 63 N. Y. 631; *Smith* v. *Marvin,* 27 N. Y. 137; *Cobb* v. *Arundell,* 26 Wis. 553; *White* v. *Campbell,* 25 Mich. 463; *Wiley* v. *Brigham,* 16 Hun, 106; *Freeman* v. *Howell,* 4 La. Ann. 196; 50 Am. Dec. 561; *Shaw* v. *Armstrong, supra; McClain* v. *Schofield,* 74 Hun, 437; 26 N. Y. Supp. 700; *Hendy* v. *March,* 75 Cal. 566.) Where an account is stated, it cannot be examined to ascertain the items, except in case of fraud or mistake. (*Fleischner* v. *Kubli,* 20 Or. 328;. *Manchester Paper Co.* v. *Moore,* 104 N. Y. 680; *Green* v. *Thornton,* 96 Cal. 67; *Janin* v. *London etc. Bank,* 92 Cal. 14; 27 Am. St. Rep. 82.)

L. ·F. *Coburn,* for Respondent.

The demurrer to the complaint cannot be considered on this appeal. The complaint is sufficient. (*Pavisich* v. *Bean,* 48 Cal. 364; *Whitton* v. *Sullivan,* 96 Cal. 480.) The lower court did not err in admitting evidence of both the special contract as to wages, and also the probable value of the services performed, as the dispute was as to the amount of the contract price. (*Whitton* v. *Sullivan, supra; Ellis* v. *Woodburn,* 89 Cal. 132; *Swain* v. *Cheney,* 41 N. H. 234; *Scott* v. *Congdon,* 106 Ind. 268; *Kirk* v. *Wolf Mfg. Co.,* 118 Ill. 567.) The statements furnished monthly to respondent are not accounts stated. (*Coffee* v. *Williams,* 103 Cal. 550.) Plaintiff's instruction to the effect that, if monthly statements were rendered by defendant to plaintiff, which were retained by him without objection—that this is but a circumstance for the jury to consider, and which may be explained by evidence, satisfactory to them, and that said retention does not necessarily bind plaintiff, correctly states the law.· (1 Am. & Eng. Ency. of Law, 121, 124, and cases cited; *Wiggins* v. *Burkham,* 10 Wall. 129.)

BEATTY, C. J.—It was more than a year after the entry of judgment in this case when the notice of appeal from the judgment and from the order overruling the motion of defendant for a new trial was given. The appeal from the judgment has, therefore, been dismissed, and only the appeal from the order remains to be considered.

The nature of the action is fully disclosed by the second paragraph of the complaint, which reads as follows: "That the said defendant herein is indebted to the plaintiff in the sum of one thousand five hundred and ninety-seven and twenty one-hundredths dollars ($1,597.20) on account of work, labor, and services rendered and performed within two years last past by plaintiff for defendant as foreman of defendant's mill at Sisson, county of Siskiyou, state of California, at defendant's special instance and request."

The answer denies any indebtedness, and alleges payment of all salary due except three dollars and thirty-eight cents, tender of which is pleaded. The verdict of the jury was for the plaintiff for four hundred and fifty dollars, and judgment accordingly.

It appears from the statement of the evidence that the defendant—a corporation—has been engaged since the year 1889 in the operation of a sawmill, and that the plaintiff, in April of that year, entered its service. He was at first employed in a superior position in the lumberyard to sort and pile the lumber, and continued in that position until the mill closed down in December, 1890, when he was put in charge of a planing machine for a short time. Early in January, 1891, he was made foreman of the mill, and was occupying that position in July, 1891, when he received an offer of the superintendency of an electric light company at one hundred and twenty-five dollars per month. The salary he had been receiving from the defendant was one hundred dollars per month. For the purpose of retaining him in the service of the mill company, the superintendent made him an offer in some form to increase his salary, with the result that the offer of the Light com-

pany was declined, and the plaintiff remained at the mill.

What the terms of the defendant's offer was, and whether its ·conditions were observed by the plaintiff, are the facts in controversy.   The plaintiff testified, in substance, that he was offered one hundred and fifty dollars per month with board, or one hundred and seventy dollars per month without board, to commence from the month of January, 1891—the time he became foreman of the mill.   But he admits that the offer was coupled with some condition, to the effect that he should assist the superintendent in the performance of his duties, or, in other words, that he should become an assistant or vice-superintendent.   He also admits that he did not perform the duties of assistant superintendent, but excuses his failure upon grounds which are disputed, and as to which the evidence is conflicting.   The superintendent of the mill denies that he made any more definite offer than that he would do as well by the plaintiff as the electric light company, and claims that this offer was made subject to the condition that the plaintiff should go into the office of the company, familiarize himself with the books and business, take upon himself a share of the duties of the superintendent, and qualify himself to fill that position when necessary.   Whatever the agreement may have been, the plaintiff remained at the mill and continued until January, 1893, in the active discharge of the duties of foreman.   On a few occasions he went into the office, and, as he claims, made a *bona fide* offer and attempt to familiarize himself with the business of the company, in order to qualify himself to act as superintendent, and to assist in performing the duties of that position. But, he says, an excuse was always found for sending him out of the office, and he was made to feel that he was not wanted there, and accordingly ceased attending except when he was sent for.   The superintendent, on the other hand, claims that the plaintiff strangely and unaccountably absented himself from the office,

and stubbornly declined, in spite of remonstrances and expostulations, to assume the duties upon the performance of which any increase of his salary absolutely depended.

In view of the sharp conflict in the evidence as to what the contract with the plaintiff was, and as to whether he performed it upon his part, it is important to note the custom of the defendant, during the whole period of plaintiff's employment, to deliver to each of its employees at the end of the month a statement of his account, of which the following is a sample:

"Sisson, Cal., February, 1892.

"Mr. R. A. Shade, in account with Sisson Mill and Lumber Co. Please examine and advise us immediately if any errors are found.

"Cr.

"Jan. 1, by balance.................$569 46
" 31, " salary Jan.............. 100 00 $669 46
"Dr.
"Jan. 23, to cash..................$ 20 00
" 16, " check (Shreve & Co).... 25 00
" 26, to check (G. O. Brown)..... 22 00 67 00

$602 00."

It was admitted by the plaintiff that he received such a statement every month from July, 1891, to January, 1893, inclusive, as he had received them prior to that time, but he claims that shortly after June, 1891, he called the attention of the superintendent and bookkeeper of defendant to the fact that the statements did not show correctly the rate of his salary, and requested that the books and statement should be made to conform to their agreement. But, he says, the superintendent then, and subsequently, when he again spoke of the matter, put him off with some excuse, and he allowed it to go on in that way feeling confident that it would be made right when it came to a settlement. The superintendent denies that he ever heard of any claim on the part of plaintiff that he was to have more than

one hundred dollars per month until after his discharge in January, 1893, and the book-keeper says he never heard of plaintiff's claim until July, 1892, at which time, in a casual conversation which occurred while they were on a fishing excursion to McLeod river, plaintiff made some general statement to the effect that he was to be allowed an additional salary for his past services.

Such being the conflicting state of the evidence upon these material points, the court, at the request of the plaintiff, gave the jury the following instructions:

"If there has been any mistake, omission, accident, fraud, or undue advantage by which the balance of an account is incorrectly stated, it will not be conclusive between the parties, but it may be opened and re-examined, even though previously acquiesced in. I therefore charge you that if you find that monthly statements were rendered by defendant to plaintiff, which were by him retained without objection, that this is but a circumstance for you to consider, and which may be explained by evidence satisfactory to yourselves, and that said retention does not necessarily bind the plaintiff."

And the court refused to give the following instruction requested by the defendant: "If the jury believe from the evidence that the plaintiff was working for defendant by the month, and that defendant credited to plaintiff in satisfaction of plaintiff's wages a certain sum monthly, and those credits appeared as such on itemized monthly statements furnished to said plaintiff by said defendant, and that plaintiff accepted those statements without objection, then said plaintiff will be bound thereby, and it will be presumed that the monthly statements were made between said parties in accordance therewith."

These rulings were duly excepted to by defendant, and specified as errors of law in the statement on motion for a new trial. But in the brief of appellant's counsel filed in this court he discusses only the ruling of the court refusing to give the instruction last above

quoted (and another of similar purport), from which
respondent's counsel infers that he has waived or aban-
doned his exception to the giving of the instructions
requested by him, and thereby necessarily abandoned
the exception which is discussed in the brief.   But this
is straining the doctrine of waiver too far.   In discuss-
ing the refusal of the one instruction, the whole argu-
ment upon the giving of the other is necessarily involved,
and it would have been mere useless repetition to have
applied it to the converse of the proposition.   Clearly,
the appellant is entitled to a decision upon these excep-
tions, and, in our opinion, the rulings are clearly erro-
neous.

The question involved is not, as counsel assumes, a
mere question of acquiescence in a stated account, or
the extent to which a creditor is bound by failure to
object, within a reasonable time, to a written statement
of account by the debtor.   It is, on the contrary, a ques-
tion of estoppel, arising out of the action of the defend-
ant, based, presumably, upon the silence of the plaintiff
when he ought to have spoken—a question, in other
words, whether the plaintiff is not bound by that con-
clusive presumption which obtains " whenever a party
has, by his own declaration, act, or omission, intention-
ally and deliberately led another to believe a particular
thing true, *and to act upon such belief.*"   (Code Civ. Proc.,
sec. 1962, subd. 3.)

When a statement of account of past transactions is
delivered to a debtor or creditor, his retaining it without
objection is, as to such past transactions, merely an
item of evidence, more or less conclusive according to
circumstances.   But when one person is employed in
the service of another by the month, under an express
contract, for a fixed salary or wage, or under an implied
contract for the reasonable value of his services, and
the employer delivers to the employee, at the end of
each successive month, a statement of his account show-
ing the time he has worked and the rate of wages or
salary allowed, and especially when upon the face of

the account is indorsed an express request that the employee will examine it, and give immediate notice of any error, the failure to make any objection to the account, within a reasonable time, must be regarded as a deliberate admission that the rate of compensation stated in the account is the rate expressly agreed upon, or that it is the true value of the services, and that the employment is to be continued upon the same terms until there is some new agreement. In such case, the employer must be deemed to have acted upon the tacit admission of the correctness of the account, for otherwise he will have been deprived of his option to terminate the employment upon notice that more is expected than he has offered to pay. This proposition is equally true, and the presumption would be equally conclusive, in case of an account delivered periodically by the employee to the employer. If he claimed by his account a salary of one hundred and fifty dollars per month, the employer, after months of silent acquiescence, would not be heard to assert that the actual agreement was for only one hundred dollars, or that the services were reasonably worth no more than that amount. The reason, in either case, for holding master or servant bound by his tacit admission is, that he has thereby deliberately led the other to believe the stated rate of compensation to be the true one, and to act upon it.

The application of the principle of estoppel to an account stated is discussed in the case of *Janin* v. *London etc. Bank*, 92 Cal. 14, 27 Am. St. Rep. 82, and the only reason it was not enforced against the plaintiff in that case was that it clearly appeared that the bank had neither acted nor omitted to act in consequence of Janin's apparent acquiescence in the correctness of the account stated. The case of *McClain* v. *Schofield*, 74 Hun, 437, 26 N. Y. Supp. 700, is direct authority on the proposition here involved.

In this case there was, as above stated, evidence upon which the jury might have found that plaintiff did object to the accounts rendered, but there was conflicting

evidence, and the instructions under consideration were based upon the assumption that no objection was made. The jury were instructed, in effect, that the plaintiff was not bound even if he never made any objection; and this, for the reasons stated, was an error, and a vital one, necessitating a reversal of the order.

In view of the necessity of a new trial, and the possibility of another appeal, it is proper to notice some of the remaining assignments of error.

The ruling of the court upon the demurrer to the complaint cannot be reviewed upon this appeal from the order denying a new trial, but if the plaintiff should again recover a judgment, the question of the sufficiency of the complaint might be raised on the next appeal, and, therefore, it is not improper to notice the point presented by the briefs.

The demurrer to the complaint was not a general demurrer for want of facts, but a special demurrer upon the grounds of ambiguity and uncertainty, in this: "It cannot be told therefrom whether plaintiff relies upon a specific contract or upon an implied contract for the reasonable value of the services alleged."

The authorities cited by the respondent to sustain the order of the superior court overruling the demurrer do not go to the extent of holding that a complaint, such as this, is good against a special demurrer for uncertainty or ambiguity.

In the case of *Pavisich* v. *Bean*, 48 Cal. 364, there does not appear to have been even a general demurrer, and the complaint alleged a stipulated compensation. In *Whitton* v. *Sullivan*, 96 Cal. 480, there was a special demurrer on the ground of uncertainty, but the complaint alleged the reasonable value of the services, and the question of its insufficiency is not alluded to in the opinion of the court. Of the cases referred to in *Pavisich* v. *Bean, supra*, that of *Wilkins* v. *Stidger*, 22 Cal. 232, 83 Am. Dec. 64, is the first in which a complaint, such as this, was held to state a cause of action according to the rules of our code. But in that case there was not even

a general demurrer, and the decision seems at last to have been rested upon the ground that, in the absence of a demurrer, the deficiencies of the complaint were cured by the verdict. In *Abadie* v. *Carrillo*, 32 Cal. 172, there appears to have been only a general demurrer for want of facts. The complaint was held good; Sanderson and Rhodes concurring only because they felt bound by the decision in *Wilkins* v. *Stidger, supra*. In *Merritt* v. *Glidden*, 39 Cal. 564, 2 Am. Rep. 479, it is plainly intimated that while such a complaint—one following the common-law forms—is good against a general demurrer, it is not good against a special demurrer, upon the ground that it is unintelligible or uncertain.

At the trial the plaintiff relied principally upon the express agreement to which he testified, but, in view of the ambiguity of the complaint, the defendant was entitled to cross-examine the plaintiff and his witnesses as to the nature of his employment when the mill was idle and when it was running—the length of time it was idle, etc., with a view to determining the reasonable value of his services. This was a matter necessarily in issue under the pleadings. The court erroneously sustained some objections to cross-examination on these points, but the error was rendered harmless by the persistence of counsel for defendant, who, in spite of the rulings, managed to bring the whole matter out by varying the form of his questions.

And, considering the fact that the reasonable value of plaintiff's services was from first to last a contested issue in the case, it was error to exclude direct evidence offered by defendant as to the wages paid to other men in the same and similar positions when the mill was idle and when it was running.

There was some evidence admitted over objections on both sides not strictly material, but none that could have prejudiced the party objecting. On the whole, with the slight exceptions noted above, the whole case seems to have been very fully and fairly laid before the jury.

The order denying a new trial is reversed, and the cause remanded.

McFARLAND, J., TEMPLE, J., and VAN FLEET, J., concurred.

HARRISON, J., dissenting.—I dissent. The transactions between the plaintiff and the defendant do not, in my opinion, disclose any of the elements of an estoppel; nor do I think that the receipt and retention by a laborer, without objection, of a statement of account rendered him by his employer, is governed by different rules from those which control a similar transaction between other parties. No reason is urged in support of such a proposition, other than that of estoppel, and no authority is cited to sustain it. In *McClain* v. *Schofield*, 74 Hun, 437, 26 N. Y. Supp. 700, the plaintiffs were commission merchants, and sold goods manufactured by the defendants, for which they had received a commission of three per cent. Subsequently the plaintiffs were informed by the defendant that for the future they would pay a commission of only two per cent, and assented thereto. The statements thereafter rendered by the defendants were made upon this basis, and the plaintiffs, without objection thereto, accepted payment of the amount thus shown. The basis of the rule which renders such transactions between other parties the equivalent of an account stated is that the acceptance, without objecting thereto within a reasonable time, is to be regarded as an implied admission that it is correct, but, like all admissions upon which no action has been had by the other party, is subject to explanation, and, if shown to have been made erroneously or under a mistake, is not binding upon the party making it. The application of the rule itself was originally limited to transactions between merchants, and, in some jurisdictions, is still so limited (*Anding* v. *Levy*, 57 Miss. 51, 34 Am. Rep. 435), and was afterward extended to statements made to their customers by all dealers in merchandise. It is only within modern days that it has been extended

to persons in other relations. In *Lockwood* v. *Thorne*, 18 N. Y. 285, one of the leading cases in this country on this subject, it was said: "An account stated or settled is a mere admission that the account is correct. It is not an estoppel. The account is still open to impeachment for mistakes or errors. Its effect is to establish *prima facie* the accuracy of the items without other proof, and the party seeking to impeach it is bound to show affirmatively the mistake or error alleged. The force of the admission, and the strength of the evidence which will be necessary to overcome it, will depend upon the circumstances. of the case. But the parties are never precluded from giving evidence to impeach the account, unless the case is brought within the principles of an *estoppel in pais*, or of an obligatory agreement between the parties, as, for instance, where, upon a settlement, mutual compromises are made." And in *Brown* v. *Kimmel*, 67 Mo. 430, it was said: "It will readily be perceived, on an examination of the numerous cases reported on this subject, that they have been decided on the peculiar circumstances attending each case, and most generally in proceedings in equity. In no case has such implied admission been held to be an estoppel, but simply a *prima facie* case throwing the burden of contradiction or explanation on the adverse party." (See, also, *Wiggins* v. *Burkham*, 10 Wall. 129; *Kusterer Brewing Co.* v. *Friar*, 99 Mich. 190; *Hutchinson* v. *Market Bank*, 48 Barb. 302.)

Being only evidence from which an agreement may be inferred, it can be treated as the equivalent of an agreement only when the transaction is of such a nature as to authorize such inference, and, since as evidence its effect is always varied by the circumstances under which the statement was given and received, and by the character of the transaction to which it refers, as well as the parties between whom it was made, it cannot be said as matter of law that the mere receipt and retention by the plaintiff of the statements rendered him by the defendant bound him by their contents.

The evidence before the jury concerning the terms of the original hiring of the plaintiff was conflicting, but, if the jury were satisfied from this evidence that the defendant had agreed to pay the plaintiff the wages, as claimed by him, that agreement would be the basis of his right of recovery, and he would not be "bound" by any subsequent statements of the defendant as to the amount in which it claimed to be indebted to him therefor after such wages were earned. His failure to make objection thereto would not preclude him from explaining the circumstances under which he received the statements and leaving to the jury to determine whether they were such as to constitute an express admission of their correctness.

Of course, if the circumstances connected with the receipt of the statements are such as to create an estoppel *in pais* in behalf of the employer, a different rule would prevail, not by reason, however, of the implied admission of the correctness of the statement, but by reason of the fact that the employer had acted thereon, and would be injured if the admission could be repudiated. The burden of showing this fact, however, would rest upon the employer, and must be established affirmatively, and not left to conjecture. In *Janin* v. *London etc. Bank*, 92 Cal. 14, 27 Am. St. Rep. 82, it was said in reference thereto: "The burden of proof to show that the bank sustained damage or injury by the negligence (that is, the failure to make objection) of plaintiff was upon the defendant, and this it was required to show by evidence having some reasonable tendency to establish such fact." There is nothing in the present record tending to show that the defendant acted, or failed to act, in respect to any matter, by reason of the omission of the plaintiff to object to the correctness of the statements, and there is nothing more than conjecture that, if he had objected thereto, the defendant would have sought to terminate the employment; and there is certainly no foundation for such a presumption.

An order overruling a demurrer to a complaint, on

the ground of ambiguity, does not constitute reversible error, if, after such order, the cause is tried upon its merits, and it does not appear that the defendant was prevented from making whatever defense he had to the cause of action shown by the plaintiff's evidence. (Code Civ. Proc., sec. 475.)